UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DR. CHRISTOPHER E. CENAC, JR. AND      :
DR. AUDRA CENAC,      :    NO.: _____
: 
    Plaintiff      :
:    JUDGE: _____
VERSUS      :
: 
:    MAGISTRATE: _____
ORKIN, LLC,      :

    Defendant

## COMPLAINT

Pursuant to the Federal Rules of Civil Procedure, Plaintiffs Dr. Christopher E. Cenac, Jr. and Dr. Audra Cenac respectfully submit this Complaint and represent as follows:

### THE PARTIES

1.

Plaintiffs Dr. Christopher E. Cenac, Jr. and Dr. Audra Cenac ("the Cenacs") are natural persons and domiciliaries of Terrebone Parish, Louisiana.

2.

Made Defendant herein is Orkin, LLC ("Defendant") a Delaware limited liability company with its principal place of business being located in Atlanta, Georgia. The Defendant's registered office in this state is in Baton Rouge, Louisiana. Orkin, LLC was previously known as and registered in this state as Orkin, Inc., which was known as and registered in this state prior to that as Orkin Exterminating Company, Inc.

### JURISDICTION & VENUE

3.

Jurisdiction is proper in this United States District Court pursuant to 28 U.S.C. § 1332(a), which grants federal district courts "diversity jurisdiction" over "all civil actions where the

matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states."

4.

Exclusive of interest and costs, the amount of damages for which Defendant is alleged to be liable is in excess of $75,000.  Moreover, the Cenacs are natural persons domiciled in Terrebone Parish, Louisiana. They are therefore completely diverse from Defendant, a Delaware limited liability company with no members who are domiciled in Louisiana.

5.

Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the Cenacs' claims occurred, and the property that is the subject of the action is located, in Terrebone Parish, Louisiana. In turn, Terrebone Parish is within the jurisdictional bounds of the United States District Court for the Eastern District of Louisiana.

FACTUAL ALLEGATIONS

6.

The Cenacs own a home ("the Home"), as well as other buildings, structures, and property, located at 269 Country Club Drive in Houma, Louisiana, which they purchased from Mr. Allen Eschete in 2004.

7.

The Defendant is in the business of providing termite prevention and pest control services through local branch offices around the United States.  The Defendant is also in the business of furnishing what are, in essence, insurance policies against termite infestation and damages caused by termites.

8.

In 1991, Mr. Allen Eschete, the previous owner of the Home, purchased—and renewed yearly until he sold the Home—a "Full Renewable Subterranean Termite Home Ownership Repair Guarantee" ("the Termite Contract") from the Defendant. The Termite Contract obligated the Defendant to (a) treat the Home for termites, (b) re-treat when appropriate, (c) inspect for termite activity and termite damage, and (d) institute and/or pay for the repair of any damage to the Home caused by termites. Attached hereto as Exhibit "A" is a copy of the Termite Contract.

9.

When the Cenacs purchased the Home from Mr. Eschete in 2004, the Termite Contract and rights thereunder were transferred to the Cenacs with the Defendant's approval and agreement. The Cenacs have paid the annual renewal fee for such Termite Contract, as well as other sums of money for protection and insurance against termites, to the Defendant ever since they purchased the Home.

10.

In 2007, the Cenacs paid the Defendant an additional sum of money to "add" treatment and protection of the Home by the Defendant against Formosan termites.

11.

In or around May of 2015, the Cenacs noticed what appeared to be termites swarming around and coming out of one of the windows in the second floor of their Home. They immediately notified the Defendant of the situation. Two weeks later, the Defendant sent a technician to re-treat the area near the window where the termite activity was occurring. The Cenacs vacated the Home temporarily during this time, and when they returned two days later

found more, larger swarms of termites emanating from two windows adjacent to the window that had been re-treated by the Defendant.

12.

Once again, the Cenacs notified the Defendant of the termites pouring out of the windows, and the Defendant returned to the Home to assess the situation. The Defendant then advised the Cenacs that certain destructive work to the interior of the Home would be necessary to investigate other areas of potential termite activity and damage, and further agreed to reimburse the Cenacs the costs associated with such destructive investigation.

13.

Upon the Defendant's advice and authorization, the Cenacs proceeded to engage a contractor to perform certain interior demolition work in their Home to investigate for termite activity near where the original termite activity was seen. During the course of such limited destructive work, which took place in early June of 2015 in the kitchen area, large amounts of live, active termites were discovered, as well as massive amounts of termite damage. The costs of such initial destructive work totaled $10,922.00, and despite the authorization by the Defendant for the Cenacs to proceed with such destructive work, and the express agreement to reimburse them for such costs, the Defendant has not reimbursed the Cenacs even a penny to date.

14.

Since the initial destructive, investigative work in the kitchen area of the Home, other areas of live termites and termite damage have been found in the Home. Yet, the full extent of the termite infestation and damage cannot be ascertained without a great deal of further destruction of various components of the Cenacs' Home. The Defendant, despite having

observed the live termite infestation and massive amounts of termite damage uncovered thus far, has failed and refused to participate with the Cenacs in the necessary investigation of termite activity and damage, or to commit to repairing the Cenacs' Home.

15.

At the current moment, the Cenacs' Home is uninhabitable and in a state of partial deconstruction. The Cenacs have been forced to indefinitely vacate their Home until such time as (1) the full extent of termite activity and damage can be investigated and uncovered, (2) the Home can be re-treated to eradicate the active, live termite infestation(s) present, and (3) the Home can then be repaired and restored.

16.

To date, the Defendant has failed and refused to comply with its contractual obligations and accept responsibility for the termite infestation and damage to the Cenacs' Home. Instead, the Defendant has continually delayed the progress of advancing the necessary investigation and repairs to the Cenacs' Home by promising to do certain things one minute, and then reneging on such promises in the next.

17.

The Cenacs have already sustained a significant amount in monetary damages, and will continue to incur substantial monetary damages, as a result of, *inter alia*, the Defendant's (1) failure to adequately protect the Cenacs' Home from termites; (2) failure and refusal to authorize and/or pay for the reasonable and necessary investigation into the extent of termite activity and damage to the Home; (3) failure to properly re-treat the Home; (4) failure and refusal to reimburse the Cenacs for costs and expenses it had already authorized and/or agreed to pay for; (5) failure and refusal to authorize and/or pay for the repairs necessary to restore the Home to its

original condition; and (6) failure to reimburse the Cenacs' expenses and costs incurred in vacating the Home, storing their belongings, obtaining alternative housing, etc.

<u>CAUSES OF ACTION</u>

**First Cause of Action - Violations of the Louisiana Unfair Trade Practices Act**

18.

Louisiana's Unfair Trade Practices Law ("LUTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. § 51:1405. The Defendant has violated LUPTA by reason of the following acts and/or omissions:

A.      After the large-scale live termite infestation and damage was uncovered in the kitchen area at the Cenacs' Home in June, per the express authorization and agreement by the Defendant to reimburse the Cenacs the costs incurred for the demolition work required for same, the Defendant has still failed and refused to actually reimburse the Cenacs for any of these costs. The Cenacs previously furnished the invoices for such services to the Defendant, and it has been more than three months since the Cenacs incurred such costs without being reimbursed.

B.      Also shortly after the termite infestation and damage was uncovered in the kitchen area at the Cenacs' Home, the Defendant's local manager, Mr. Russell Fielder, stated to Dr. Cenac that the Defendant "really had no contract" with the Cenacs since (he claimed) it was not "transferrable" from the previous owner to the Cenacs. This statement was made despite the facts that (1) the Cenacs have been paying the annual renewal fee for the Termite Contract since they purchased the Home in 2004; (2) the Defendant's own paperwork for the Cenacs' termite policy clearly references the original Termite Contract and policy number issued to the previous owner; and (3) the "Formosan Termite" policy obtained by the Cenacs clearly states that it was "added" to the original Termite Contract issued to the previous owner. Such conduct is deceptive,

unscrupulous, unethical and exactly the type of practice that the Louisiana Unfair Trade Practice Act was designed to protect against.

C.       The Defendant had originally agreed to a reasonable protocol with the Cenacs to investigate the termite activity and damage in the Home.  However, shortly after agreeing to such protocol, the Defendant reneged, and for the last three (3) months has continually delayed and hindered (a) the process of resuming the termite investigation, (b) fully re-treating the Cenacs' home, (c) paying for the costs and expenses incurred by the Cenacs it had authorized and already agreed to pay, and (d) accepting responsibility to repair the Cenacs' Home per the Termite Contract.  By continually delaying the acceptance of its responsibilities, the Defendant has attempted to gain an unfair advantage over the Cenacs and to put pressure on them to accept far less than what they are entitled to under the Termite Contract and by law.

D.       Upon information and belief, the State of Louisiana, Department of Forestry and Agriculture, as well as other consultants hired by the Cenacs, have determined that the Defendant wholly failed to meet the minimum standards of care in performing its termite treatment and inspection services.  Furthermore, upon information and belief, it appears the Defendant failed to perform certain services it had represented to the Cenacs it had actually performed.  Such conduct would constitute the type of deception in a consumer transaction that the Louisiana Unfair Trade Practices Act was designed to protect against.

E.       The Defendant has further seemingly attempted to use inconsistent, convoluted, confusing and potentially deceptive forms and documentation in its consumer transaction(s) with the Cenacs, some of the terms of which do not apply to (or are inconsistent with) the Termite Contract.  Whether or not the use of such forms was intentional or not, they create a confusing, at best, and deceptive, at worst, illustration of the rights and obligations of the parties involved in

this consumer transaction.  Such conduct on the part of the Defendant violates the Louisiana Unfair Trade Practices Act.

F.      Finally, upon information and belief, in early 2015, the Defendant had knowledge of a moisture condition at the Home that might make termite activity more conducive, but failed to actually report such condition to the Cenacs.   Purportedly, the Defendant attempted to send the Cenacs a letter informing them of the condition and warning them that if the condition was not remedied, their policy could be cancelled.  However, such letter was never delivered to the Cenacs, and was, purportedly, returned to the Defendant as "undeliverable." Furthermore, the Defendant never attempted to follow up with the Cenacs personally or otherwise to ensure that the Cenacs were aware of such condition or that it could be remedied.  Upon information and belief,  such  documentation  was  designed  to  create  a  paper  trail  to  effectively  allow  the Defendant to attempt to cancel the Cenacs' termite policy precisely when the Cenacs needed their policy the most.  Indeed, the Defendant cited the existence of this letter to Dr. Cenac when the termite issues were first reported.  If, in fact, the Defendant is attempting to use the existence of this "undelivered" letter as a defense to the viability of the Cenacs' policy, such action would further  constitute  a  violation  of  the  Louisiana  Unfair  Trade  Practices  Act  by  virtue  of  the deceptive, unscrupulous and unethical conduct related thereto.

19.

As a result of the Defendant's violations of LUPTA, the Cenacs have sustained, and/or will sustain, monetary damages, and relief is hereby sought pursuant to LUPTA for all damages allowable, including treble the amount of the Cenacs' actual and consequential damages arising out of this matter.

1161751.1

**Second Cause of Action – Breach of Contract**

20.

The Defendant has breached the Termite Contract with the Cenacs by, and in bad faith, failing and refusing to properly and timely perform its obligations under the Termite Contract. Specifically, the Defendant has, *inter alia,* (a) failed to properly treat and/or re-treat the Home to protect against the infestation of termites and termite damage; (b) failed to properly inspect the Home to protect against termites and termite damage; (c) failed and refused to coordinate, participate in and/or pay for the reasonable and necessary investigation into the extent of termite activity and termite damage in the Home; and (d) failed and refused to coordinate and/or pay for the necessary repairs related to the termite activity and damage in the Home. As a result of such breaches, failures, acts and omissions, the Cenacs have sustained, and will continue to sustain, monetary damages, for which it they are entitled to compensation, and for which they herein sue the Defendant. Such damages far exceed the jurisdictional threshold of this Court.

21.

The Cenacs have performed or, alternatively have substantially performed, or have been released from performing, their obligations under the Termite Contract. The Cenacs have satisfied all conditions precedent to the enforcement of said Termite Contract and the recovery of damages against the Defendant.

**Third Cause of Action – Breach of Good Faith Duties Under La. R.S. § 22:1973**

22.

Defendant is liable to the Cenacs for violation of Defendant's duty of good faith and fair dealing under La. R.S. § 22:1973.

1161751.1

23.

Pursuant to La. R.S. § 22:1973, an insurer "owes to his insured a duty of good faith and

fair dealing." Accordingly:

> A. . . . The insurer has an affirmative duty to adjust claims fairly and promptly
> and to make a reasonable effort to settle claims with the insured or the claimant,
> or both. Any insurer who breaches these duties shall be liable for any damages
> sustained as a result of the breach.
>
> B. Any one of the following acts, if knowingly committed or performed by an
> insurer, constitutes a breach of the insurer's duties imposed in Subsection A of
> this Section:
>
>> (1) Misrepresenting pertinent facts or insurance policy provisions
>> relating to any coverages at issue.
>> . . . .
>> (5) Failing to pay the amount of any claim due any person insured
>> by the contract within sixty days after receipt of satisfactory
>> proof of loss from the claimant when such failure is arbitrary,
>> capricious, or without probable cause.

24.

Defendant is an insurer within the ambit of La. R.S. § 22:1973 because it entered into an

insurance contract by which it agreed to indemnify the Cenacs for property damage arising out of

a specified contingency, namely termite infestation.

25.

By committing the acts enumerated in this Petition for Damages, Defendant has breached

its duty of good faith and fair dealing. Specifically, and without limitation, Defendant has

arbitrarily and capriciously failed to pay amounts due to the Cenacs for more than sixty days

after satisfactory proof of loss; Defendant has arbitrarily and capriciously failed to perform the

termite damage repair work for which the Cenacs have paid premiums for years; Defendant has

misrepresented the terms and enforceability of the Cenacs' termite damage indemnity contract;

after agreeing to honor its termite damage indemnity contract by taking certain actions, Defendant has reneged on its agreement; and Defendant has misrepresented to the Cenacs that it would take certain actions and perform certain repair work in a specified fashion.

26.

Because Defendant has violated La. R.S. § 22:1973, the Cenacs are entitled to general and special damages as well as "penalties assessed against the insurer in an amount not to exceed two times the damages sustained." *Id.*

**Fourth Cause of Action – Breach of Payment Duties Under La. R.S. § 22:1892**

27.

Defendant is liable to the Cenacs for violation of Defendant's duty of prompt payment under La. R.S. § 22:1892.

28.

Pursuant to La. R.S. § 22:1892:

A. (1) All insurers issuing any type of contract . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. . . .
. . . .
(4) All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim.

B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) of this Section, respectively, . . . shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured . . . as well as reasonable attorney fees and costs.

29.

Defendant is an insurer subject to La. R.S. § 22:1892 because it entered into an insurance contract by which it agreed to indemnify the Cenacs for property damage arising out of a specified contingency, namely termite infestation.

30.

Defendant is liable to the Cenacs for damages and penalties under La. R.S. § 22:1892, because, for more than thirty days following the receipt of satisfactory proof of loss, Defendant has arbitrarily and capriciously failed to pay the Cenacs for expenses incurred and damages suffered as a result of a covered termite infestation.

31.

Because Defendant has failed to timely pay the Cenacs as required by La. R.S. § 22:1892, Defendant is subject to a mandatory penalty of fifty percent of the amount found to be due from Defendant to the Cenacs, together with reasonable attorney's fees and costs.

**Fifth Cause of Action – Detrimental Reliance**

32.

In the alternative, the Defendant is liable to the Cenacs for detrimental reliance.

33.

To their detriment, the Cenacs reasonably relied upon the representations of the Defendant that, *inter alia*: (a) the Termite Contract was in full force and effect; (b) the Defendant was properly treating their Home against termite infestation; (c) any termite infestation and/or damage caused by termites would be repaired by the Defendant at its cost; (d) the Defendant would pay the Cenacs costs in investigating the extent of the termite damage once termite activity and damage was discovered; and (e) the Defendant would reimburse the Cenacs for all

reasonable costs related to the termite activity and damage discovered in their Home.  Indeed, the Cenacs have been paying the Defendant for coverage against termites and termite damage ever since they purchased the Home, and have relied on the promise that their Home was covered and protected by the Defendant's termite policy.  The Cenacs have been damaged as a result of the failure of the Defendant to fulfill its promises.

### Sixth Cause of Action – Unjust Enrichment

34.

In the alternative, and only to the extent the Court finds no other available cause of action, the Defendant is liable to the Cenacs for unjust enrichment.

35.

The Defendant was unjustly enriched by accepting the annual renewal premium for the Termite Contract for more than a decade from the Cenacs.  Such premiums were paid by the Cenacs for the protection of their Home against termites and termite damage, and for the full repair and restoration of their Home in the event of same.  The Defendant was enriched, to the impoverishment of the Cenacs, for its promises to protect their Home from and against termites and termite damage, and the Cenacs are entitled to recover all damages occasioned by the Defendants' failure to comply with its promises to do so.

### Seventh Cause of Action – Negligence and/or Gross Negligence

36.

Additionally and/or alternatively, the Defendant owed the Cenacs a legal duty to exercise the ordinary skill, care and diligence exercised by other pest and termite control operators in the same or similar circumstances.  The Defendant, however, negligently, knowingly, recklessly, and/or grossly failed to exercise the ordinary skill, care and diligence in performing its duties and

obligations.  Such negligent, and/or grossly negligent, acts and/or omissions constitute a direct and proximate cause of damages to the Cenacs, and for such damages, the Cenacs herein sue the Defendant.

### Eighth Cause of Action – Negligent Misrepresentation

37.

In the alternative, the Cenacs state that the Defendant negligently misrepresented that the Cenacs would be (a) covered and protected against any termite infestation of their Home; (b) covered and protected for repairs to their Home for damage caused by termites; (c) reimbursed for costs of demolition and investigating the termite activity in their Home; and (d) reimbursed for all reasonable costs and damages associated with the termite infestation and damage to their Home.  The Defendant further negligently misrepresented that its treatment of the Home was up-to-date and met industry standards, which was untrue. These negligent misrepresentations by the Defendant has caused the Cenacs to suffer damages and pecuniary loss in an amount far exceeding the jurisdictional threshold of this Court, and for such damages, the Cenacs herein sue the Defendant.

### Damages

38.

The Cenacs are not able to know at this time the full extent of their damages sustained by reasons of the Defendant's breaches of contract and duties, delictual acts and deceptive trade practices; in fact, such damages are continuing to be incurred and are ongoing.

### Jury Demand

39.

The Cenacs hereby request a trial by civil jury on all issues so triable.

**Prayer**

WHEREFORE, Plaintiffs, Dr. Christopher Cenac and Dr. Audra Cenac, pray that Defendant, Orkin, LLC, be served with a copy of this petition, and duly cited to appear and answer same, and that after the lapse of all legal delays and due proceedings are had, there be judgment rendered herein in favor of Plaintiffs for all sums reasonable in the premises, including damages, together with legal interest thereon at the maximum legal rate from the date the obligation became due until paid, attorney's fees, penalties, court costs, and such additional relief as is just and to which it may be entitled. Moreover, Plaintiffs, the Cenacs, specifically request that Defendant, Orkin, LLC, be cited to the Louisiana Attorney General for its violations of the Louisiana Unfair Trade Practices Act and that there be judgment in favor of the Cenacs against Defendant for damages and attorney's fees thereunder.

Respectfully submitted,

TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.

By: /s/    *Edward J. Laperouse*
    Edward J. Laperouse, II # 29310
    ted.laperouse@taylorporter.com
    John S. Campbell, III # 23674
    johnstone.campbell@taylorporter.com
    Ryan K. French, Bar # 34555
    ryan.french@taylorporter.com
    451 Florida Street, 8th Floor (70801)
    P. O. Box 2471
    Baton Rouge, LA 70821
    Telephone: (225) 387-3221
    Fax: (225) 346-8049

**Attorneys for Plaintiffs, Dr. Christopher E. Cenac, Jr. and Dr. Audra Cenac**

1161751.1

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2015, a copy of the foregoing Complaint was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.  I also certify that I have mailed this filing via U.S. mail, properly addressed and postage prepaid, to the following:

*Orkin, LLC*
through its Registered Agent for service:
Corporation Service Company
320 Somerulos Street
Baton Rouge, LA 70802-6129


_____ /s/  *Ryan K. French* _____
Ryan K. French

1161751.1