UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER E. CENAC, JR., ET AL.                    CIVIL ACTION

VERSUS                                               NO: 15-4521

ORKIN, LLC                                           SECTION: "A" (3)

## <u>ORDER AND REASONS</u>

The following dispositive[1] motions are before the Court: **Motion for Summary Judgment Under the Contract (Rec. Doc. 52)** filed by defendant Orkin, LLC; **Motion for Partial Summary Judgment on LUTPA Claims (Rec. Doc. 54)** filed by defendant Orkin, LLC; **Motion for Partial Summary Judgment on Bad Faith Penalties (Rec. Doc. 56)** filed by defendant Orkin, LLC; **Motion for Partial Summary Judgment on Claims for Negligence, Gross Negligence, and Negligent Misrepresentation (Rec. Doc. 58)** filed by defendant Orkin, LLC; **Motion for Partial Summary Judgment on Emotional Distress Damages (Rec. Doc. 60)** filed by defendant Orkin, LLC; **Motion for Partial Summary Judgment on Claims for Unjust Enrichment and Detrimental Reliance (Rec. Doc. 62)** filed by defendant Orkin, LLC; **Motion for Summary Judgment on Contract Transfer (Rec. Doc. 76)** filed by plaintiffs, Drs. Audra and Christopher E. Cenac, Jr. (referred to at times as "C. Cenac"). All motions are opposed. The motions, noticed for submission on May 16, 2018, are before the Court on the briefs without oral argument.[2]

---

[1] Eight motions in limine are also pending.

[2] Oral argument has been requested but the Court is not persuaded that oral argument would be helpful.

## I. BACKGROUND

In the spring of 2015 Plaintiffs' home located in Houma, Louisiana became infested with Formosan termites. At the time of the infestation, Plaintiffs had their home under contract with the Orkin pest control company.[3] Orkin treated the property to kill the destructive pests but the damage to the home was significant. At first Plaintiffs and Orkin worked cooperatively to address Plaintiffs' damages. Orkin agreed to reimburse Plaintiffs for certain relocation expenses.[4] At one point early on, Mr. Russell Fielder with Orkin told Dr. C. Cenac that Orkin was willing to repair the home. (Rec. Doc. 76-9, C. Cenac deposition at 230-31). Ultimately, negotiations broke down. Plaintiffs' repair estimates are over one million dollars.

The primary issue in this case is whether Orkin is obligated, contractually or otherwise, to pay for the repairs to the property that were caused by Formosan termites. In addition to their contractual claims, Plaintiffs have asserted other non-contractual claims under Louisiana law.

Orkin now moves for summary judgment on all claims.[5] Plaintiffs have filed their own cross motion pertaining to the contract claim.

A jury trial was scheduled for July 9, 2018. The Court has continued the trial in light of the large number of pending motions.

---

[3] It is undisputed that the entity called Orkin, LLC is the proper defendant to respond to Plaintiffs' claims even though some of the relevant documents refer to other Orkin entities that may or may not continue to exist.

[4] Orkin advises that in April 2016, it made an unconditional payment to Plaintiffs in the amount of $222,168.00 to reimburse them for certain expenses and to provide funding to commence repairs to the residence. (Rec. Doc. 54-1 at 4 n.15).

[5] Orkin has filed six dispositive motions each targeted at a specific claim or cause of action.

## II.    DISCUSSION

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

*A.    Contract Claims*

The issue at the heart of the contract claim is whether Orkin is contractually obligated to pay for the significant repairs to Plaintiffs' property that were caused by Formosan termites. Plaintiffs' position is that an ownership repair guarantee that was issued in favor of a former owner was transferred to them when they purchased the property in 2003. Then in 2007 they upgraded this guarantee to include coverage for Formosan termites. Thus, according to Plaintiffs, Orkin is contractually obligated to pay for the Formosan-related repair costs to their home.

Orkin's positon is that the clear and express terms of the governing agreements exclude any liability on the part of Orkin to pay for the cost of repairing the Formosan termite damage that forms the basis of this lawsuit.

Plaintiffs' contract claim originates with a Subterranean Termite Agreement (Rec. Doc. 76-3, Exh. A) issued in 1991 to Mr. Allen Eschete, a former owner of the property.[6] According to the agreement, Mr. Eschete paid $1,230.00 to have Orkin provide an initial treatment of the property for subterranean termites. The agreement unequivocally excludes protection against Formosan termites.[7] As part of the agreement, Mr. Eschete also obtained a Full Renewable Subterranean Termite Home Ownership Repair Guarantee ("OR"). Pursuant to the OR Guarantee, Orkin agreed, for as long as Mr. Eshete owned the premises and paid the annual renewal fee, to re-treat when required and to repair any new damage to the building or its

---

[6] Plaintiffs did not purchase the residence from Mr. Eschete but rather from Mr. Arlen Cenac, a distant cousin of Dr. Christopher Cenac's. (Rec. Doc. 76-9, C. Cenac deposition at 27). It is not clear whether Arlen Cenac bought the property from Mr. Eschete or whether there was some other intermediate owner. It is not clear whether the 1991 termite contract was ever transferred to Arlen Cenac.

[7] Formosan termites, sometimes dubbed "Supertermites," are a species of termite which is much more aggressive than the native Subterranean termite. (Rec. Doc. 52-1, Orkin's Memo in Support at 2 n.2).

contents caused by Subterranean termites. (Rec. Doc. 76-3). Importantly, the OR Guarantee did

not cover damage from Formosan termites, and it includes the following pertinent restriction:

"This Guarantee is **not transferrable** after one year from the original treatment date." (*Id.*)

(emphasis added). Presumably the original treatment date occurred in February 1991, which is

when the Agreement was executed. Therefore, unless the non-transferability limitation is invalid

under Louisiana law, the OR Guarantee could not have been transferred to any subsequent

owner of the property (including the Cenacs) after February 1992, without Orkin's consent.

Plaintiffs purchased the property in 2003. As is common with residential purchases, the

existing termite contract was transferred to Plaintiffs as the new owners of the property. Dr.

Christopher Cenac was adamant that he was assured at the closing that he was obtaining a full

termite repair guarantee. It is undisputed, however, that those assurances—while they might

have been made by realtors or bankers or other persons—were not made by anyone with Orkin.

(Rec. Doc. 76-9, C. Cenac deposition at 53, 86). It is also clear from Dr. C. Cenac's deposition

that he relied on those other persons' oral assurances as to what the Orkin agreement provided

without having actually read the agreement itself. Moreover, Dr. C. Cenac's erroneous

assumptions about the nature of the termite agreement that was transferred at the closing cannot

be attributed to any ambiguities in the document. The 1991 agreement is not ambiguous and

even if it were, Dr. C. Cenac did not read it.[8]

---

[8] Dr. C. Cenac could not recall when he had seen the original 1991 agreement for the first time.
(Rec. Doc. 76-9, C. Cenac deposition at 56). It is unclear when Dr. C. Cenac actually read the
original 1991 agreement that contained the OR Guarantee although he believes that it might
have been in 2007. (Rec. Doc. 76-9, C. Cenac deposition at 56). Even then he does not believe
that he read the agreement in its entirety. (*Id.* at 57). The Court observes that even a brief,
cursory glance at the face of the agreement or the OR Guarantee itself makes clear that
Formosan termites are not covered. Yet Dr. C. Cenac was equivocal about whether he knew in
2007 that he did not have coverage for Formosan termites. (*Id.* at 58, 60).

In 2007, Plaintiffs received an undated letter to "Dear Customer" from Orkin salesman Jerry L. Aucoin. (Rec. Doc. 80-3, Exh. B). It is apparent from the letter that Aucoin was soliciting sales of treatment specific to Formosan termites from existing Orkin customers who did not already have Formosan termite coverage. The letter states in part:

> Orkin Pest Control is offering a special offer to our current customers who do not have Formosan Termite coverage. The Supplemental Treatment will not affect your current coverage in any way at all. This treatment allows Orkin to retreat your home with the new termiticides designed to stop and kill Formosan and Native Subterranean termites.

(Rec. Doc. 80-3, Exh. B).

Plaintiffs opted to buy the additional treatment for Formosan termites. Dr. Audra Cenac signed the Orkin Continuous Protection Plan on June 21, 2007 (Rec. Doc. 52-4). Dr. C. Cenac testified that it was his understanding, based on his discussion with Aucoin, that he was just adding Formosan termite coverage to his existing Orkin contract, which to Dr. C. Cenac's understanding provided him with the full OR Guarantee for home repairs. In other words, Dr. C. Cenac's understanding was that since home repairs were already part of his existing termite contract, and since the Formosan coverage was just being added on to his existing contract, he would be covered for home repairs necessitated by Formosan termite damage. But the 2007 Orkin Continuous Protection Plan states in the first paragraph: "This Service does not cover any damage to the structure or contents." (*Id.*). Later in the same paragraph, in all uppercase letters for emphasis, the following statement appears: "CUSTOMER EXPRESSLY RELEASES ORKIN FROM ANY CLAIMS FOR TERMITE DAMAGE OR REPAIR." (*Id.*). Dr. C. Cenac did not read this language. (Rec. Doc. 76-9, C. Cenac deposition at 92).

In searching for an affirmative contractual obligation by Orkin to repair Formosan termite property damage, Plaintiffs rely on the original 1991 Eschete agreement—which while it included

a repair guarantee expressly excluded damage from Formosan termites—joined with the 2007 Orkin Continuous Protection Plan—which while it included coverage for Formosan termites expressly excluded property repairs. Plaintiffs move for summary judgment on the issue of contract transfer, pressing their contention that the OR Guarantee from the 1991 Eschete agreement was transferred to them along with the termite agreement as a whole, even though the OR Guarantee contained an express provision barring transfer after one year from the original treatment date. Alternatively, Plaintiffs argue that Orkin's actions throughout the years manifested an intent to transfer the OR Guarantee to them.

Orkin moves for summary judgment on Plaintiffs' contract claims contending that the clear and express terms of the original 1991 Eschete agreement and the 2007 Orkin Continuous Protection Plan exclude any liability on the part of Orkin to pay for the cost of repairing the Formosan termite damage that forms the basis of this lawsuit.

In support of their motion for summary judgment, Plaintiffs argue that La. R.S. § 3:3370 renders the non-transferability limitation in the OR Guarantee invalid under Louisiana law. The statute reads in relevant part:

> Any currently effective standard contract and all terms and conditions contained therein shall be transferable to a subsequent owner of the property covered by such contract.

La. R.S. § 3:3370(A)(2).

Plaintiffs argue that if the statute is construed to allow Orkin to limit transfer of the OR Guarantee, then the statute would be meaningless and accomplish nothing.

The parties cite no decisions related to this statutory provision and the Court's own research has likewise revealed none. The Court notes, however, that La. R.S. § 3:3370 was amended in 2001 to include the provision quoted above. 2001 La. Acts 551, § 1. Thus, by the

time that La. R.S. § 3:3370(A)(2) was enacted, the OR Guarantee had been rendered non-transferable for nearly 10 years, *i.e.*, one-year after the original 1991 termite treatment, which would have been in or about February 1992. By 2003 when the contract was transferred to Plaintiffs, the absence of the OR Guarantee was simply one of the agreement's "terms and conditions." Regardless of what § 3370(A)(2) was intended to accomplish prospectively, it could not as a matter of law render the OR Guarantee transferrable once it had validly (in the absence of a statutory prohibition) become non-transferrable pursuant to the express terms of the agreement.

Even if La. R.S. § 3:3370(A)(2) did not void the OR Guarantee's transfer limitation, Plaintiffs argue that Orkin's actions throughout the years manifested an intent to transfer the OR Guarantee to them. Plaintiffs point out that Orkin's yearly service reports continued to indicate "OR" in the blank for Guarantee Type after they assumed the contract from Mr. Eschete. (Rec. Doc. 76-6 Exh. D, Termite Service Reports 6/8/02—6/5/15). Orkin's own internal database indicated the Guarantee Type as "OR." (Rec. Doc. 76-7 Exh. E). Plaintiffs point out that they made and Orkin accepted the annual payments, which increased annually, that Mr. Eschete had been making to maintain the OR Guarantee. Plaintiffs point out that without the OR Guarantee they really received nothing by assuming the Eschete contract and that without the OR Guarantee, the agreement obligated Orkin to do nothing.

These arguments are not so easily dismissed even though the 1991 agreement had an integration clause. In Louisiana a written contract may be modified by the mutual consent of the parties even when it contains a provision that it must be modified in writing. *Fleming v. JE Merit Constr., Inc.*, 985 So. 2d 141, 146 (La. App. 1st Cir. 2008) (citing *Cajun Constr., Inc. v. Fleming Const. Co.*, 951 So. 2d 208, 214 (La. App. 1st Cir. 2006)). Modification of a written agreement can

be presumed by silence, inaction, or implication. *Id.* Whether a written agreement has been so modified is a question of fact. *Driver Pipeline co. v. Cadeville Gas Stor., LLC*, 150 So. 3d 492, 501 (La. App. 2nd Cir. 2014) (citing *Wisinger v. Casten*, 550 So.2d 685 (La.App. 2d Cir.1989); *Pelican Elec. Contractors v. Neumeyer*, 419 So.2d 1 (La.App. 4th Cir.1982)). The party asserting modification of an obligation must prove by a preponderance of the evidence facts or acts giving rise to the modification. *Id.*

First, Plaintiffs are correct in observing that without the OR Guarantee, they gained nothing in having the 1991 Eschete agreement transferred to them. The non-transferability provision applies to "This Guarantee," ostensibly meaning the entirety of the OR Guarantee (including re-treat), not just the repair obligation. (Rec. Doc. 52-3 at 2). The Agreement does not state that upon transfer after one year from the original treatment date the guarantee drops down to an LC level (re-treat guarantee). While the LC Guarantee was transferrable, the 1991 agreement did not have an LC Guarantee—it had an OR Guarantee. Thus, if Orkin didn't intend to transfer the OR Guarantee to Plaintiffs, then it begs the question of why Orkin would agree to transfer the 1991 termite contract at all.[9] Without the OR Guarantee Plaintiffs received no benefit from the transfer, and this is particularly troubling given that Orkin continues to sell OR Guarantees to customers who want them. (Rec. Doc. 52-5, Orkin 30(b)(6) deposition at 246). The Court recognizes that no one from Orkin mispresented anything to Plaintiffs as to the nature of the contract that they were assuming—again, Dr. Christopher Cenac could not recall speaking with anyone at Orkin about the contract that he wanted to assume—but one could argue that by agreeing to the transfer at all Orkin was tacitly manifesting an intent to transfer the OR Guarantee

---

[9] Of course the obvious reason to allow the transfer would be to ensure that Orkin retained the business related to Plaintiffs' property, which might otherwise fall to a competitor.

to Plaintiffs. The alternative—that Orkin, who presumably reads and understands its own contracts, knowingly transferred a contract that obligated it to do nothing for its customer—is simply not plausible.

Second, the Court finds it telling that all of Orkin's business records, both internal and external, indicated that the Guarantee type on Plaintiffs' property was "OR." Orkin's explanation for this—that the "OR" designation on all of Plaintiffs' records—including the yearly documentation issued to them in the form of service reports—merely referred to the terms of the original 1991 agreement is nonsensical. (Rec. Doc. 52-5, Orkin 30(b)(6) deposition at 113). If this is to be believed, then no one from Orkin could have accurately informed the Cenacs as to which plan they had in place without consulting Orkin's legal department. And given that all of Orkin's database records indicated that the guarantee type on Plaintiffs' property was OR, one would assume that Orkin had been billing Plaintiffs' at the higher renewal rate for the OR Guarantee.[10]

As Orkin points out, however, even if Plaintiffs prevail on the issue of contract transfer, it remains that the OR Guarantee does not cover damage from Formosan termites, which is the only type of damage at issue in this case. The 2007 Orkin Continuous Protection Plan extends coverage to Formosan termites but termite damage and repair are expressly excluded. Unlike the original 1991 non-Formosan agreement, the 2007 agreement contains no express obligation to pay for repairs caused by any type of termite.

Plaintiffs' contentions regarding the 2007 Orkin Continuous Protection Plan are based on Dr. C. Cenac's understanding of the agreement following his discussion with Aucoin, that he was

---

[10] Ray Quesenberry confirmed that Orkin does charge a higher renewal rate for an OR Guarantee but he did not know what that amount would be. (Rec. Doc. 52-5, Orkin 30(b)(6) at 41-48).

just adding Formosan termite coverage to his existing Orkin contract.[11] This argument is foreclosed, however, by the agreement's integration clause which clearly forecloses the suggestion that anything Aucoin might have said about the agreement could alter its express terms. (Rec. Doc. 52-4, Exh. B). That provision states in relevant part:

> ENTIRE AGREEMENT: This Agreement and the attached Treatment Report shall be the entire Agreement between Customer and Orkin. No other agreements, understandings or representations, whether written or oral, with respect to the Agreement shall be binding as they shall be merged into and superseded by this Agreement. Customer warrants and acknowledges that Customer has not relied on or been induced by any other agreements, understandings or representations, whether written or oral, in signing this Agreement. The terms of the Agreement stated herein may not be amended or altered unless a written change is approved and signed by a corporate Officer of Orkin, and it has been approved by the Louisiana Structural Pest Control Commission. No other employees or agents of Orkin have authority to amend or alter any part of this Agreement.

(Rec. Doc. 52-4, Exh. B).

Notwithstanding the express damage repair exclusions in the 2007 agreement, Plaintiffs suggest that the 2007 agreement is ambiguous because of exceptions to the property damage waiver contained in the Limitation of Liability section. (Rec. Doc. 52-4, Exh. B at 2). That section states that the customer waives any claims for damages except for termite damage repairs as set out above. It also states that "*[w]ith the sole exception of any claim for termite damage repairs*, Customer waives any claim in any lawsuit . . . ." (*Id.*) (emphasis added).

---

[11]  For purposes of the summary judgment analysis, the Court will assume that Aucoin represented to C. Cenac that the 2007 Orkin Continuous Protection Plan provided coverage for repairs necessitated by Formosan termites—which is contrary to the agreement itself—or that Aucoin represented that the 2007 plan could just be tacked onto the existing non-Formosan termite contract—which is certainly plausible given that all of Orkin's computer records would have indicated to Aucoin that Plaintiffs had in place an OR Guarantee. ("I 100 percent remember asking him if they had any – if I signed this, did it void or have any issues with my old contract, because I knew it was one of the better contracts. And he certainly said, 'No. It would not affect that coverage in any way. It only adds to the policy to give Formosan coverage to the previous coverage you have.'") (Rec. Doc. 76-9, C. Cenac deposition at 84); ("My understanding was that this was in addition to the repair contract I had, and that if Formosan termites were found and seen and they caused damage, that this would repair those issues as well.") (*Id.* at 90).

Plaintiffs also raise the argument that in 2007 they actually entered into two separate Formosan agreements, one covering their residence and one covering a barn building, which is a large metal structure on Plaintiffs' property. Plaintiffs contend that Orkin misled them during this litigation as to which agreement applied to their residence. Plaintiffs point out that the agreements are not comparable because only the 2007 Continuous Protection Plan includes a property damage waiver whereas the other agreement—the Special Service Agreement (Rec. Doc. 91-6, Exh. E)—does not. Plaintiffs suggest that the other agreement might be the one that applies to their residence.

In so far as the contract claims are concerned, both of these arguments fail because they confuse the issue of a waiver for certain types of damage with an affirmative contractual undertaking to indemnify for property repairs. Neither the 2007 Orkin Continuous Protection Plan nor the Special Service Agreement contains an express contractual undertaking to pay for property repairs. In fact, the Special Service Agreement contains no guarantees of any kind, including for retreatment in the event of infestation. Any ambiguities either as to the damage waiver itself or as to which agreement applies to the residence do not create an express contractual obligation to repair property damage.

Plaintiffs' arguments regarding the potential ambiguity in the damage waiver of the 2007 Orkin Continuous Protection Plan and the ambiguity as to which of the 2007 agreements applies to their residence may have an impact, however on the other aspects of their contract claim, *i.e.,* that Orkin breached its service contract with them in various ways, such as failing to inspect on a regular basis and failing to properly treat for termites. Whether Plaintiffs can recover property repair damages as part of their breach of contract claim will turn on the factual question of which of the 2007 agreements actually applies to their residence (the Special Service Agreement, while

it does not contain a damage waiver also carries no duties to inspect, etc.) and whether the damage waiver in the 2007 Orkin Continuous Protection Plan, if applicable, is ambiguous in light of the language contained in the Limitation of Liability section that suggests that a customer can file a claim for termite damage repairs.[12] (Rec. Doc. 52-4, Exh. B at 2). These issues remain pending.

In sum, while the Court grants Plaintiffs' motion on contract transfer, Orkin is entitled nonetheless to judgment as a matter of law on Plaintiffs' contract claim, at least insofar as they are seeking indemnity for property repairs pursuant to an express contractual obligation to provide it.

## B.    *LUTPA Claims*

Orkin moves for summary judgment on Plaintiffs' Louisiana Unfair Trade Practices Act ("LUTPA") Claim. Citing the allegations made in the complaint, Orkin argues that none of the alleged conduct rises to the level necessary to support a LUTPA claim. Orkin contends that at best, the allegations, if true, would perhaps establish a breach of contract or disagreement as to how to proceed to investigate the extent of the damage.

La. R.S. § 51:1405(A) prohibits any "unfair or deceptive acts or practices in the conduct of any trade or commerce," and § 51:1409(A) grants a right of action to "[a]ny person who suffers any ascertainable loss" from a violation of this prohibition. *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1059 (La. 2010). It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition. *Id.* (citing *Dufau v. Creole Engineering, Inc.,* 465 So. 2d 752, 758 (La. App. 5th Cir. 1985)). (In order to recover under

---

[12] Mr. Quesenberry's explanation of the potential ambiguity only added to the ambiguity. (Rec. Doc. 52-5, Orkin 30(b)(6) deposition at 26 (A: "Just because it's a re-treat guarantee doesn't mean that the customer can't file a claim for damages.").

LUTPA a plaintiff must prove "some element of fraud, misrepresentation, deception, or other unethical conduct" on the part of the defendant.).

The range of prohibited practices under LUTPA is extremely narrow. *Cheramie,* 35 So. 3d at 1059. Courts have repeatedly held that under the LUTPA, the plaintiff must show that the alleged conduct "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* (quoting *Moore v. Goodyear Tire & Rubber Co.*, 364 So. 2d 630, 633 (La. App. 2nd Cir. 1978)). LUTPA prohibits only fraud, misrepresentation, and similar conduct, not mere negligence. *Qual. Envir. Processes, Inc. v. I.P. Petroleum Co.*, 144 So. 3d 1011, 1025 (La. 2014) (citing *Cheramie*, 35 So. 3d at 1059).

Orkin is entitled to judgment as a matter of law on Plaintiffs' LUTPA claim. The evidence in this case does not support Plaintiffs' contention that Orkin engaged in any of the type of opprobrious conduct necessary to support a LUTPA claim. Orkin is entitled to judgment as a matter of law on Plaintiffs' LUTPA claim.

### C.     Bad Faith Penalties

Orkin moves for summary judgment on Plaintiffs' claim for bad faith penalties under the Louisiana Insurance Code, La. R.S. §§ 22:1892 and 22:1973. Orkin argues that it is not an insurer and that it did not issue an insurance policy to Plaintiffs.

Louisiana's Insurance Code defines an "insurer" as

[A]ny person, reciprocal exchange, interinsurer, Lloyds insurer, fraternal benefit society, industrial and burial insurer, or any insurer that markets under the Home Service Marketing distribution method and issues a majority of its policies on a weekly or monthly basis, or any other legal entity engaged in the business of insurance, including insurance producers. Insurer shall also mean medical service plans, hospital service plans, health maintenance organizations, and prepaid limited health care service plans. For the purposes of this Part, these foregoing entities shall be deemed to be engaged in the business of insurance.

La.R.S. § 22:1962(C).

Orkin is not an insurer. The penalty statutes of the Insurance Code apply to insurers. *Bazile v. Nestle USA, Inc.*, 939 So. 2d 644, 648 (La. App. 3rd Cir. 2006). Orkin never assumed the role of an insurer and it did not issue an insurance policy to Plaintiffs. Orkin is entitled to judgment as a matter of law on Plaintiffs' claim for bad faith penalties.

### D.       *Negligence, Gross Negligence, and Negligent Misrepresentation*

Orkin moves for summary judgment on Plaintiffs' claims of negligence, gross negligence, and negligent misrepresentation. Orkin contends that its relationship with Plaintiffs and its obligations to them arise out of contract, not out of general tort duties.

In their opposition Plaintiffs cite the following omissions as being tortious: Orkin allowed twenty months to pass without inspecting the property; Orkin used a deficient amount of pesticide to treat the home; Orkin failed to identify conditions conducive to termite infestation; Orkin recommended a vapor barrier that attracted termites. In short, Plaintiffs contend that Orkin negligently treated and retreated the home.

While the same acts or omissions may give rise to both actions in tort and contract, the plaintiff must show that the negligence claims are separate and distinct and do not arise from the breach of contract claim. *Everett v. Philibert*, 13 So. 3d 616, 620 (La. App. 1st Cir. 2009) (citing *Franklin v. Able Moving & Stor. Co.*, 439 So. 2d 489, 491 (La. App. 1st Cir. 1983); *Dublin v. Dublin*, 641 So. 2d 1036, 1039-40 (La. App. 2nd Cir. 1994)). The tort claim must arise from a duty other than one imposed by the contract. *Id.* (citing *In re St. Louis Enceph. Outbreak*, 939 So. 2d 563, 566-67 (La. App. 2nd Cir. 2006)).

All of Plaintiffs' cited omissions arise from a contractual duty owed to them personally. Their tort claims are not separate and distinct from their contract claims. Orkin is entitled to

judgment as a matter of law on Plaintiffs' claims for negligence, gross negligence, and negligent misrepresentation.

### E. Emotional Distress Damages

Orkin moves for summary judgment on Plaintiffs' claim for emotional distress damages.

Parties to a contract may recover damages for mental anguish if they prove that the contract was intended to gratify a non-pecuniary interest and that the party who breached the contract should have known his failure to perform would cause the non-breaching party those type of damages. *Matherne v. Barnum*, 94 So. 3d 782, 791 (La. App. 1st Cir. 2012); La. Civ. Code art. 1998. Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee. *Id.* art. 1998.

Plaintiffs argue that their contract was intended to gratify a non-pecuniary interest because it protected their home. Dr. C. Cenac stated in his affidavit, however, that his "primary concern in contracting with Orkin was in making sure that Orkin would compensate [him] for any termite damages, Formosan or otherwise, occurring during the period of our Orkin contract." (Rec. Doc. 90-10, C. Cenac affidavit ¶ 2).

Both Plaintiffs described in their depositions the horrible scenarios when they discovered the infestation. It is the Court's understanding that the house was rendered uninhabitable pending repairs, which for reasons that are not clear, Plaintiffs have not effected. If this case goes to trial on the breach of contract claim for failure to properly inspect, treat, and retreat, then Plaintiffs will be allowed to seek damages for mental anguish. Orkin's motion for summary judgment as to emotional distress damages is denied.

### F.     Unjust Enrichment and Detrimental Reliance

Orkin moves for summary judgment on Plaintiffs' claim for unjust enrichment and detrimental reliance. Orkin contends that Plaintiffs cannot pursue damages under either legal theory because they have other remedies available to them at law.

The elements of an unjust enrichment claim are 1) an enrichment of the defendant, 2) an impoverishment of the plaintiff, 3) a connection between the enrichment and the resulting impoverishment, 4) an absence of justification or cause for the enrichment and impoverishment, and 5) there must be no other remedy available at law. *Garber v. Badon & Ranier*, 981 So. 2d 92, 100 (La. App. 3rd Cir. 2008) (citing *Baker v. Maclay Props. Co.*, 648 So. 2d 888 (La. 1995)); La. Civ. Code art. 2298. Under element number five, it is not the success or failure of other causes of action, but rather the *existence* of other causes of action, that determines whether unjust enrichment can be applied. *Garber*, 981 So. 2d at 100. "[U]njust enrichment principles are only applicable to fill a gap in the law where no express remedy is provided." *Id.* (quoting *Louisiana Nat'l. Bank of Baton Rouge v. Belello,* 577 So. 2d 1099, 1102 (La. App. 1st Cir.1991)).

The Cenacs concede that they have no claim for unjust enrichment. (Rec. Doc. 91, Opposition at 5 n.6). Orkin is entitled to judgment as a matter of law on Plaintiffs' claim for unjust enrichment.

The doctrine of detrimental reliance is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations or silence. *Suire v. Lafayette City-Par. Consol. Gov't*, 907 So. 2d 37, 59 (La. 2005) (quoting *Babkow v. Morris Bart, PLC*, 726 So. 2d 423, 427 (La. App. 4th Cir. 1998)). To establish detrimental reliance a party must prove three elements by a preponderance of the evidence: 1) a representation by conduct or word, 2) justifiable reliance, and 3) a change in position to one's detriment because of the

reliance. *Id.* (citing *Lakeland Anesth., Inc. v. United Health. of La., Inc.*, 871 So. 2d 380, 393 (La. App. 4th Cir. 2004)).

Orkin argues that detrimental reliance is not a theory available to Plaintiffs because their relationship with Orkin is governed by contract. Orkin points out that the 2007 Orkin Continuous Protection Plan includes a comprehensive integration clause, which precludes reliance on oral representations outside of the agreement.

Plaintiffs argue in opposition that the reasonableness of their reliance on Jerry Aucoin's representations to them is not appropriate for determination on summary judgment. Plaintiffs also dispute whether the 2007 Orkin Continuous Protection Plan applies to their residence, positing instead that the Special Service Agreement, which contains no integration clause, may apply.

The Court is persuaded that Plaintiffs' reliance on anything that Aucoin told them about the nature to the 2007 agreements—whether the Orkin Continuous Protection Plan or the Special Service Agreement—would not be justified or reasonable as a matter of law in light of the express language in those documents. If the Orkin Continuous Protection Plan applied to the residence then that agreement contains a comprehensive integration clause that forecloses reliance on oral representations. The face of the document, which Plaintiffs did not read, is express in excluding any obligation to repair property. If the Special Service Agreement applied to the residence then that agreement is express in advising that the customer is purchasing a single treatment that was guaranteed for 30 days only. (Rec. Doc. 91-6 Exh. E).

A person who signs a written agreement is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it. *Williams v. Interstate Dodge, Inc.*, 34 So. 3d 1151, 1156 (La. App. 2nd Cir.

2010) (citing *So. Treats, Inc. v. Titan Props., LLC*, 924 So. 2d 677 (La. App. 2nd Cir. 2006); *First So. Farm Credit, ACA v. Gailliard Farms, Inc.*, 880 So. 2d 223 (La. App. 2nd Cir. 2004)).

Whatever representations Aucoin made to Plaintiffs, those representations did not relieve Plaintiffs of the obligation to read what they were signing. Plaintiffs cannot claim justifiable reliance when the express terms of the documents they signed foreclosed their understanding based on oral statements. Orkin is entitled to judgment as a matter of law on Plaintiffs' claim for detrimental reliance.

### III.     CONCLUSION

The sole claim that remains pending is Plaintiffs' breach of contract claim for failure to properly inspect, treat, retreat, etc. Plaintiffs will be allowed to seek recovery for emotional distress damages if their breach of contract claim goes to trial. Whether Plaintiffs can actually recover damages under any theory will depend on the factual question of which of the 2007 agreements actually applies to their residence (the Special Service Agreement carried no duties to inspect, retreat, etc.), and whether the damage waiver in the 2007 Orkin Continuous Protection Plan, if that is the applicable agreement, is ambiguous. The Court may allow Orkin to file a dispositive motion regarding the ambiguity issue.

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment Under the Contract (Rec. Doc. 52)** filed by defendant Orkin, LLC is **GRANTED** insofar as Plaintiffs are seeking indemnity for property repairs pursuant to an express contractual obligation to provide it;

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment on LUTPA Claims (Rec. Doc. 54)** filed by defendant Orkin, LLC is **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment on Bad Faith Penalties (Rec. Doc. 56)** filed by defendant Orkin, LLC is **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment on Claims for Negligence, Gross Negligence, and Negligent Misrepresentation (Rec. Doc. 58)** filed by defendant Orkin, LLC is **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment on Emotional Distress Damages (Rec. Doc. 60)** filed by defendant Orkin, LLC is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment on Claims for Unjust Enrichment and Detrimental Reliance (Rec. Doc. 62)** filed by defendant Orkin, LLC is **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment on Contract Transfer (Rec. Doc. 76)** filed by plaintiffs, Drs. Audra and Christopher E. Cenac, Jr. is **GRANTED**;

**IT IS FURTHER ORDERED** that the pending motions in limine and their associated motions for leave to reply **(Rec. Docs. 64 66 68 70 72 74 99 100 101 103 104 105 122 123)** are **DENIED** without prejudice to the filing party's right to re-urge the motion should it relate to a claim that remains pending;

**IT IS FURTHER ORDERED** that counsel for the parties shall immediately contact the assigned magistrate judge for the purpose of scheduling a settlement conference, said conference to take place no later than **July 27, 2018.** The Court will schedule a status conference for the purpose of selecting a new trial date if the case does not settle. No new dispositive motions or motions in limine shall be filed or re-urged in the interim.

June 12, 2018

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE